FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

02 SEP 30 AM 8:56

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CV 99-B-1691-NW |
| vs. | ) ) ) | |
| CITY OF SHEFFIELD FIRE DEPARTMENT; et al., | ) ) ) | |
| Defendants. | ) ) | |
| GEORGE WHITNEY LOVE, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | CV 99-B-2995-NW |
| CITY OF SHEFFIELD, ALABAMA; et al., | ) ) ) | |
| Defendants. | ) ) | |

ENTERED
SEP 3 0 2002

## MEMORANDUM OPINION

This case is presently pending before the court on motions for summary judgment filed by defendants, City of Sheffield, Alabama ["the City"], (docs. 39 and 49), and the Civil Service Board of Sheffield, Alabama ["the Board"], (doc. 48).[1]

---

[1] The Board's motion for summary judgment was filed by the Board and its members, which were named in their individual and official capacities. By separate order the court has dismissed the individual board members.

1

Plaintiff Equal Employment Opportunity Commission ["EEOC"] and Plaintiff George Whitney Love have sued the City and the Board, alleging age discrimination with regard to a promotion within the City's Fire Department. The EEOC's Complaint alleges that defendants discriminated against Michael Kantor, Hoyt Holman, and Terry Hall. Defendants have moved for summary judgment on the ground that there are no disputed issues of fact and that they are entitled to judgment as a matter of law.

Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the City's motion for summary judgment as to the claims brought by the EEOC is due to be denied, the City's motion for summary judgment as to Love's claims is due to be granted, and the Board's motion for summary judgment is due to be denied in part and granted in part.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Determining credibility, weighing evidence, and drawing inferences from the facts are the functions of the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS[2]

The City of Sheffield employs approximately 100 people. The City employs approximately two dozen people in its fire department. (Doc. 51 Ex. Q; Ex. HH at 45.)

In 1997, the City decided to add the position of Assistant Fire Chief, and one of the departments three captains, Dewey King, was selected to fill that position. At the same time, the City decided to fill the King's former position with Matt Mothershed (age 37), a Driver/Firefighter. (Doc. 51, Ex. FF at 17, 26.) Mothershed was chosen over six older individuals that had more seniority with the fire department. (*Id.* at 24-25.) Four of those

---

[2]Although some statements of fact are disputed, the evidence is cited in the light most favorable to plaintiffs, the non-moving parties, and all reasonable inferences from admissible evidence are drawn in favor of plaintiffs. *See e.g., Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000).

3

six older individuals are the four firemen claimants in this case: Michael Kantor (age 56), Terry Hall (age 56), Hoyt Holman (age 53), and George Love (age 40). Hall, Holman, and Kantor were Lieutenants at the time Mothershed was promoted; Love was a Driver.

The evidence before the court reveals that the decision-making process went through several steps before a final decision was made. Tom Isbell, Fire Chief, told Hoyt Holman that he and Daniel Brocato, a city councilman, had discussed the promotion and agreed they wanted to promote someone younger. (Doc. 51, Ex. C ¶ 8.) Brocato told Love that the decision makers were looking for a younger person. (Doc. 51, Ex. AA at 10-11.) Isbell testified that he "preferred" Mothershed at the time the position was created. (Doc. 51, Ex. FF at 18.)

The position of Assistant Fire Chief was posted in the firehouses and approximately twelve firemen applied for the position, including the claimants (Kantor, Holman, Hall, and Love) and Mothershed. (Doc. 51, Ex. GG at 34-36, Ex. HH at 65-67.) Isbell selected three individuals – Larry Sandford, Mayor of Sheffield; Clayton Kelly, City Clerk; and Brocato – to interview the applicants and make an advisory recommendation. (Doc. 51, Ex. FF at 24, Ex. GG at 40.) Each of the applicants was interviewed by the team and the team recommended three names to Isbell: Dewey King (Captain), Mothershed (Driver), and Larry Pilkington (Fire Inspector). (Doc. 51, Ex. Q, Ex. HH at 61-64; doc. 53, Ex. 6 at 36.) The team recommended that King be promoted from Captain to Assistant Fire Chief and that Mothershed be promoted from Driver to Captain, skipping the rank of Lieutenant. (Doc. 51, Ex. FF at 26, Ex. GG at 47-48, Ex. HH at 88-89.)

4

These recommendations were given to Isbell. (Doc. 51 Ex. HH at 61-64.) He sent the recommendations to the Board for approval. The Board formalized the selection of King for the position of Assistant Fire Chief and Mothershed for the position of Captain. ( Doc. 51, Exs. S-V; Ex. BB at 23, Ex. FF at 26-27.)

This selection procedure deviated from the customary practice that had been to select a candidate for promotion from a pool of the three most-senior firemen in the rank below the vacancy. (Doc. 51, Ex. B ¶ 6, Ex. C ¶ 7, Ex. BB at 27-28, Ex. EE at 18, Ex. FF at 30.) Although defendants contend that this practice was not always followed, nothing in the record indicates any actual deviation from this practice, except the promotion of Mothershed from Driver to Captain, skipping the rank of Lieutenant.

The claimants filed charges of discrimination with the EEOC, alleging age discrimination against the City.

The City's position statements to the EEOC state that Mothershed was selected because he was the "most qualified" candidate and that he had better "people skills." (Doc. 51 Ex. S-V.)

The City offered as its reason for not promoting Kantor to the position of captain the following position statement in response to Kantor's EEOC charge:

> Mr. Kantor was not determined to be the best candidate for the job and thus was not promoted based on the criteria established by the Civil Service Board.
>
> In addition, Mr. Kantor has a long history with the Fire Department of not attending schools or taking extra training to become a better fire fighter and shows little interest in anything around the fire station where he is employed. Mr. Kantor does not drive a fire truck since he contends he cannot see well

5

enough to drive. Anyone promoted to Captain in the Fire Department would be required to drive, which Mr. Kantor has expressed that he is not willing to do.

In an evaluation of Mr. Kantor by a previous fire chief the following statement was contained:

> "In regular station duties he does just what he has to do and no more. He is one of those people who can and does gripe about something all the time. He is intelligent and has the talent to do many different things with his life. His attitude, desire, and confidence leaves [sic] much to question. As an example I asked him if he would like to study the fire codes and when on duty let him work with the Fire Marshal and learn all the aspects of the Fire Marshal's duties, he never volunteers for anything to upgrade himself. . . . It is a shame, a man with his potential does not influence me or his fellow officers and firemen enough to show me that he deserves to be promoted.

(Doc. 51, Ex. S.)

In its response to the EEOC charge of Hall, the City provided the following position statement:

> . . . Matt Mothershed was promoted to the job of Captain by the Civil Service Board. He had been employed by the Fire Department since 1979 and the Civil Service Board determined that based on his ability, experience, and demonstrated interest in the Fire Department, he should be considered as the best candidate. The Fire Chief recommended Mr. Mothershed and advised the Civil Service Board that Mr. Mothershed had better "people skills" to deal with the employees and the public that would be required of a captain in the Fire Department, that he had been to more schools for training, that he made sure the men on his shift were qualified, and that he showed more interest in doing his job. Mr. Mothershed had demonstrated technical ability and community interest during his career with the Fire Department.

(Doc. 51, Ex. T.)

The City's response to Holman's EEOC charge is substantially similar to its response to Hall's charge. The Holman response states:

6

> . . . Matt Mothershed was promoted to the job of Captain by the Civil Service Board. He had been employed by the Fire Department since 1979 and the Civil Service Board determined that based on his ability, experience, and demonstrated interest in the Fire Department, he should be considered as the best candidate. Mr. Holman was considered to be the second best candidate. The Fire Chief advised the Civil Service Board that Mr. Mothershed had better "people skills" to deal with the employees and the public that would be required of a captain in the Fire Department than Mr. Holman. Mr. Mothershed had demonstrated technical ability and community interest during his career with the Fire Department.

(Doc. 51, Ex. U.)

In its response to the EEOC charge of Love, the City provided the following position statement:

> Mr. Love was not determined to be the best candidate for the job and thus was not promoted based on the criteria established by the Civil Service Board.
>
> The vacant captain position for which Mr. Love applied was sought by several applicants, and was awarded to the fire department employee applicant deemed best qualified pursuant to the Civil Service Act and the rules and regulations of the Civil Service Board.
>
> Mr. Love was a driver in the fire department when seeking the position of captain. During his employment he did not show much interest in bettering his position and did not attend schools offered to improve his knowledge and understanding of the role of a supervisor employee.

(Doc. 51, Ex. V.)

Isbell testified that he selected Mothershed for promotion to Captain because he was the "best qualified." (Doc. 51, Ex. FF at 19.) When asked why he thought Mothershed was the best qualified, Isbell stated, "Well, he had been to more schools, instructor, he had done everything you can do." (*Id*. at 20.) He testified that the only specific criteria he had in mind in selecting Mothershed was he "wanted the best man for the job." (*Id*. at 29.) However,

7

nothing in the record indicates that Isbell was aware of Mothershed's training as compared to the other candidates for promotion. Isbell did not mention that EMT certification was a factor in Mothershed's selection for the position of captain; in fact he testified that he was only "pretty sure" that Mothershed had his EMT license. (Doc. 53, Ex. 5 at 34.) However, in his affidavit, signed approximately six weeks after his deposition and submitted with the City's Motion for Summary Judgment, Isbell testified:

> When the promotion of Mothershed was made in 1997, I believed that it was necessary to have someone in that position who was EMT qualified together with other qualifications. Hall, Holman, and Kantor were not qualified as EMTs and in my opinion were not qualified for the captain position. I recommended Mothershed for the captain position to the Civil Service Board.

(Doc. 49, Ex. B at 2.) EMT certification is not a requirement for the position of captain in the Sheffield Fire Department. (Doc. 51, Ex. K.)

The EEOC issued a right-to sue notice to Love on February 27, 1998, (doc. 39, Ex. A); it issued right-to-sue notices to Holman and Kantor on April 30, 1998, (doc. 48, Exs. 5 and 6.) On June 10, 1998, Bud Cramer, United States Representative, and Richard Shelby, United States Senator, requested an explanation from the EEOC regarding the age discrimination claims filed after Mothershed's promotion. (Doc. 48, Exs. 9 and 10.) In response, Cynthia Pierre, the EEOC District Director, indicated that the investigation into such claims was being reopened, (doc. 48, Ex. 11), and, on July 9, 1998, the EEOC sent its Notice of Intent to Reconsider the charges and it rescinded the right-to-sue notices previously sent to the claimants, (*see* doc. 39, Ex. B).

Following the second investigation, the EEOC found reasonable cause to believe that the City had discriminated against the claimants on the basis of their age. (Doc. 51, Exs. W-Z.)³ The EEOC filed suit on behalf of Kantor, Hall, and Holman on June 30, 1999. On August 10, 1999, it issued a right-to-sue notice to Love, (doc. 39, Ex. B); Love filed suit individually on November 8, 1999.00000

Since Mothershed's promotion in 1997, the other two Captains have retired, and their positions are officially unfilled. (Doc. 51, Ex. B ¶¶ 8-9; Ex. C ¶¶ 10-11.) The duties of the two vacant captains positions are being performed by Kantor and Holman. (Doc. 51, Ex. B ¶ 9; Ex. C ¶ 11.)

### III. DISCUSSION

#### A. THE CITY AND THE BOARD AS CLAIMANTS' "EMPLOYER"

Each defendant contends that it is not the claimants' employer. The City contends that it is not the claimants' employer because it did not make the promotion decision at issue, (City's Br. in Supp. of Mo. for Summ. J., p. 3-4), and the Board contends that it is not the claimants' employer because it does exercise sufficient control over them, (Board's Br. in Supp. of Mo. for Summ. J., p. 2-3).

However, the court is of the opinion that both the City and the Board are the claimants' employer for purposes of their promotions claims. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999)(en banc); *Williams v. City of Montgomery*,

---

³The determinations cite to no evidence in support of the cause finding.

742 F.2d 586, 588-89 (11th Cir. 1984), *cert. denied* 470 U.S. 1053 (1985). The Eleventh Circuit recognizes three general circumstances when the court should "look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's 'employer' comes within the coverage of Title VII [or the ADEA]."[4] *Lyes*, 166 F.3d at 1341.

The *Lyes* court stated:

> First, where two ostensibly separate entities are "'highly integrated with respect to ownership and operations,'" we may count them together under Title VII. [*McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987)] (quoting *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala.), *aff'd*, 664 F.2d 295 (11th Cir.1981)). This is the "single employer" or "integrated enterprise" test. Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "joint employers" and aggregate them. *See* [*Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1359-60 (11th Cir. 1994)]. This is the "joint employer" test. Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees. *See Williams*, 742 F.2d at 589. This is the "agency" test. *See generally* 2 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1309-17 (3rd ed.1996).

*Lyes*, 166 F.3d at 341.

---

[4] Like the definition of "employer" found in Title VII, 42 U.S.C. § 2000e(b), the definition of "employer" under the ADEA also includes "agents" of the employer. 29 U.S.C. § 630(b). The Eleventh Circuit has approved the use of Title VII cases on the use of the term "employer" under the ADEA. *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1263-64 (11th Cir. 1997)("In interpreting ADEA's definition of "employer," Title VII cases are helpful. . . . The only notable difference between the two statutes' definitions of 'employer" is the number of 'employees' each statute requires.").

The Eleventh Circuit has held, specifically, that a personnel board, created under the laws of Alabama, with delegated duties to make promotion decisions on behalf of a municipalities is an "employer" by virtue of its agency relationship with the municipal-employer. *Williams*, 742 F.2d at 588-89.

In this case, the City of Sheffield, through its Fire Department, exercised sufficient authority and control over the day-to-day employment of the firemen to qualify as their employer. Moreover, the City delegated the authority to make promotion decisions to the Board; therefore, with regard to promotion decisions, the Board acts as the agent of the City. For purposes of summary jugdment, such delegation of authority is sufficient to find that the Board acted as the agent of the City. The claimants may assert claims against both the City and the Board under the ADEA.

## B. TIME-BARRED CLAIMS

### 1.    EEOC Claims

The Eleventh Circuit has held that the EEOC does not have a statute of limitations for filing claims under the ADEA. *E.E.O.C. v. Tire Kingdom, Inc.*, 80 F.3d 449, 451n.1 (11th Cir. 1996)(no statute of limitations applies to EEOC for suit filed under the ADEA); *see also EEOC v. Venator Group*, No. 99 CIV. 4758 (AGS), 2002 WL 181709, *2 (S.D.N.Y. Feb. 05, 2002)("the statute of limitations contained in section 626(a) of the ADEA applies only to private litigants, and not to the EEOC."); *EEOC v. AT&T Co.*, 36 F. Supp. 2d 994, 997 (S.D. Ohio 1998)(holding there is no specific statute of limitations with respect to claims brought by the EEOC under the ADEA); *Wilkerson v. Martin Marietta Corp.*, 875 F. Supp.

11

1456, 1459-60 (D. Colo.1995)("Congress intended there be no statute of limitations where the EEOC files suit under the ADEA."). Therefore, defendants' motions to dismiss the EEOC's claims as time-barred is due to be denied.

### 2. Love's Claims.

Defendants contend that Love's claims are untimely because he did not file his complaint with 90 days of the date he received his first right-to-sue notice, which was dated February 27, 1998.[5] Love filed his claims on November 8, 1999, which was within 90 days of the date he received his second right-to-sue notice, after the EEOC had reconsidered the merits of Love's charge.

"The EEOC may issue a second ninety-day right-to-sue notice upon completion of a discretionary reconsideration of a prior determination ***provided it has given notice to both parties of its decision to reconsider within the ninety-day period provided by the initial notice of right-to-sue***." *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 246 (5th Cir. 1980)(emphasis added).[6] The evidence shows that the EEOC issued notice of its intent to reconsider Love's claims on July 9, 1998, more than 90 days after the initial notice of right-to-sue on February 27, 1998. Although "[a] second Notice tolls the limitation period . . . if the EEOC issues such Notice pursuant to a reconsideration on the merits," *see Santini*

---

[5] In order to be timely filed, the claimant must file his complaint within 90 days after being notified that the EEOC has dismissed or otherwise terminated his charge. 29 U.S.C. § 626(e).

[6] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

12

*v. Cleveland Clinic Florida*, 232 F.3d 823, 825 (11th Cir. 2000), such notice of reconsideration must be issued within "the ninety-day period provided by the initial notice of right-to-sue," for filing a claim in court. *Gonzalez*, 610 F.2d at 246.

The record demonstrates that Love did not file a complaint in federal court within 90 days of receiving his initial right to sue and that the notice of reconsideration, issued more than 90 days after the initial right-to-sue notice did not revive these stale claims. Therefore, the court finds that Love's claims against the City and the Board were untimely filed and, therefore, are due to be dismissed.

**C. Qualifications for the Position of Captain**

The City contends that Hall, Holman, and Kantor were not qualified for the position of Captain because they were not certified EMTs.[7] The EEOC argues that this articulated reason is pretextual. The court finds sufficient evidence in the record to indicate that EMT certification was not a qualification and it was not a consideration for the promotion of Mothershed to the position Captain. Moreover, the EEOC has presented evidence from which a reasonable jury could find that the City improperly considered age in making its decision to promote Mothershed.

Pursuant to the Age Discrimination in Employment Act, the ADEA, it "unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C.

---

[7]The Board has not moved for summary judgment on the ground that the claimants were not qualified for promotion to the position of Captain. ( *See* Board's Br.)

§ 623(a)(1). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000)(quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993))) (internal citations and quotations omitted).

In order to prevail on a claim under the ADEA, a claimant must first make a *prima facie* showing of age discrimination by showing "that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Id.* (citing *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir.1997)). "Once a prima facie case is established, a defendant must proffer legitimate, nondiscriminatory reasons for its employment decision. If such reasons are identified, a plaintiff then bears the ultimate burden of proving them to be a pretext for age discrimination." *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1361 (11th Cir. 1999)(citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)). For purposes of deciding the City's motion for summary judgment, the court assumes that the EEOC can establish a prima facie case of age discrimination with regard to claimants Hall, Holman, and Kantor.

In this case, the City, relying on Isbell's affidavit, argues that Hall, Holman, and Kantor were not promoted to Captain because they were not certified EMTs. This reason

is sufficient to satisfy the City's burden to articulate a legitimate, non-discriminatory reason for its decision to promote Mothershed and not to promote the claimants. Therefore:

> the presumption of discrimination is eliminated and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.

*Chapman*, 229 F.3d at 1024-25 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528-29 (11th Cir. 1997))(internal citations and quotations omitted).

The EEOC may establish that the City's articulated reason is a pretext for age discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)(quoting *Goldstein v. Manhattan Industries*, 758 F.2d 1435, 1445 (11th Cir. 1985)(citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981))). If a plaintiff chooses to establish pretext by showing that his employer's proffered reason is unworthy of credence, he must attack that reason "head on and rebut it." *Chapman*, 229 F.3d at 1030. The plaintiff must offer evidence that "casts sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'"

15

*Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

First, the record contains evidence that Isbell and Brocato considered age when selecting Mothershed. (*See* doc. 51, Ex. C ¶ 8; Ex. AA at 10-11.) Second, EMT certification – the City's articulated reason for selecting Mothershed and not selecting the claimants – is not mentioned in the City's position statements it sent to the EEOC in response to the charges of Love, Hall, Holman, or Kantor. (*See* doc. 51, Exs. S-V.) More telling, perhaps, is the fact that Isbell did not state in his deposition that EMT certification was the reason for the promotion decision, and EMT certification is not mentioned in Isbell's recommendation of Mothershed to the Board.[8] (Doc. 51, Ex. O; doc. 53, Ex. 5.) In his deposition, Isbell states that he is only "pretty sure" that Mothershed had the EMT certification. (Doc. 53, Ex. 5 at 34.) Yet, incredibly, Isbell states in his affidavit, prepared about six weeks after his deposition, that, at the time the decision to promote Mothershed was made, he considered EMT certification a ***requirement*** for the position of Captain, and that Hall, Holman, and

---

[8]Isbell's recommendation to the Board states:

> I recommend Matt Mothershed for promotion to captain in the Sheffield Fire Department. . . . Matt's promotion will bypass six men in seniority, but I think his knowledge and dedication to the department will offset this.
>
> Matt is, in my opinion, the best fireman in the City. I think he has earned this promotion by his determination and desire to better this department. He gets along with his fellow employees and the public better than any other fireman with the department.

(Doc. 51, Ex. O.)

Kantor were "***not qualified***" for the position of Captain because they were not EMT certified. (Doc. 49, Ex. B at 2.) The job description for the position of captain shows that EMT certification is not a requirement for the captain's position. (Doc. 51, Ex. K.) While the court acknowledges that an employer can change its job requirements, under the circumstances of this case, a reasonable jury could find that the EMT certification is a post-hoc justification for the decision and that age, not training, was the motivating factor in the selection of Mothershed for the promotion. *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994)("[T]his Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." (quoting, *inter alia*, *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 925 (11th Cir.1990))

Therefore, the City's motion for summary judgment as to the EEOC's promotion claims, asserted on behalf of Hall, Holman, and Kantor, is due to be denied.

**D. Administrative Civil Service Remedy**

The Board contends that the plaintiffs' claims are due to be dismissed because "the complainants did not exhaust their administrative remedies provided for in the Act creating the Civil Service Board of Sheffield, Alabama." (Doc. 48 at 2.) The Board did not cite, and the court can find, no authority to support such an assertion. The only administrative procedures that claimants are required to exhaust before filing a claim in federal court alleging age discrimination is that they must file a timely charge of discrimination with the EEOC and they must timely file their complaint after receipt of their notice of right to sue

17

from the EEOC. There is no requirement that claimants exhaust remedies available under the City's civil service procedures prior to filing suit in federal court for age discrimination. 29 U.S.C. § 633; *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47-49 (1974).

The Board's motion for summary judgment on the ground that claimants did not exhaust their remedies before the Board is due to be denied.

## IV. CONCLUSION

Based on the foregoing, the City's motion for summary judgment as to the EEOC's claim, (doc. 49), is due to be denied and its motion for summary judgment as to Love's claim, (doc. 39) is due to be denied. The Board's motion for summary judgment, (doc. 48), is due to be granted as to Love's claim and due to be denied as to the EEOC's claim. An order granting in part and denying in part defendants' motions for summary judgment, and dismissing Love's claims against defendants will be entered contemporaneously with this Memorandum Opinion.

DONE this 30th day of September, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge